Johnson, J.
delivered the opinion of the Court.
Many of the questions, growing out of the demurrer in this case, have been gotten rid of by the concessions of counsel. Those which remain, and upon which the judgment of this Court is thought necessary, may be resolved into two propositions: 1st. Whether the act of 1820, so far as it requires a sheriff, in office, to' give bond with ^additional security, is not unconstitutional and void, and the bond so given under it also void. 2nd. Whether the plaintiffs were not bound to set out in the replication, and prove on the trial, that a requisition was made on Hilliard, the sheriff, by the officers designated in the act of 1820, for additional security, on account of the insolvency, removal, or death, of the original sureties; who they were; and in whose place this defendant was substituted. And in addition to these, a 3rd question arises out of the motion for a new trial; which is, whether this defendant was bound for money received by Hilliard, in virtue of his office as sheriff,.before the defendant signed his bond, but which had not been demanded of him until afterwards.
Vide 6th artjsec"
Vide 5th artlof^heconstihv tion,
These questions are all so fully considered in the report of the cause sent up here from the Circuit Court, and we are so well satisfied with the reasoning, and conclusions, of the Judge, who presided there, that little else remains for us, than to state the questions, and concur in the conclusions. I propose, therefore, to add but little to what has been already so well said.
1st. The argument in support of the affirmative of the first proposition, is founded on the provision of our State constitution, that “ sheriffs shall hold their offices for four yearsand it is said, that having been duly elected, given his bond as required by law, and commissioned, he was in for four years; and that the act of 1820, to which I shall have occasion more particularly to refer, which declares, that if he fail to give further security, under the circumstances therein stated, his office should be considered as vacant, is a violation of this limitation of the term of office, and that a bond given in pursuance of its provisions, is therefore void.
The constitution no where provides for the mode of appointment, duties, or qualification, of sheriffs ; and, by a necessary implication, therefore, leaves the matters as they then existed, subject to such modifications as the Legislature should,from time to time, find expedient. But in common with all the other civil officers of the State, he is liable to impeachment for misdemeanor in office. It is not therefore controverted, that the Legislature may constitutionally require, that the sheriff shall give bond, and security, for the faithful discharge of the duties of his office, as a preliminary to his induction into the office. In the discharge of his duties, large sums of money, which rightfully belong to others, necessarily come into his hands ; and the propriety, and necessity of affording to the community some security against his improvident use of it, must strike every one: and it is evident, that the same necessity exists through every period of bis term. When, therefore, the security, supplied by his original bond, is impaired by the death, removal, or insolvency, of his sureties, there is certainly no hardship, or moral impropriety, in requiring him to supply it. But it is said, that his neglect, or refusal, to do so, would not amount to a misdemeanor in office, for which an impeachment would lie, and for which he might be removed; inasmuch as he might not have it in his power to comply with the requisition.
*536 There may be some difficul in ascertaining, precisely, what will, or will not, constitute a misdemeanor in office; but I hazafd little in saying, that a wilful neglect to do that which the *aw enj°*ns> whether it originate in the volition, or incapacity of the officer, is a misdemeanor. If, for instance, a sheriff duly elected and commissioned, shall refuse either to resign, or to lake upon himself any one of the duties of the office.; or, if from lunacy, or bodily infirmity, he become incapable of dis~ charging the duties of the office ; it would be a good ground ofv impeachment, although in the last case, there would be no moral turpitude. If officers, whose terms of office are prescribed and limited by the constitution, may, in despite of the Legislature continue therein, and refuse to discharge the duties of their offices ; or, if those, whose misfortune it is to have been rendered utterly incapable of discharging them, may sit like an incubus on the machinery of State, the government never could get along. I take it, therefore, that there is nothing in the constitution, or in the reasons or policy on which it is founded, to prevent the Legislature from requiring, of a sheriff in office, the additional security provided for by the act of 1820.
It is provided in the act, that, unless the officer shall, within thirty days after notice, give the additional security, “ the office of the said defaulting officer shall be regarded as vacant,” and something was said, at the argument, about the effeet of this provision. Upon looking into the act, it will be found, that it relates to all officers, who are by law required to give bonds for the faithful discharge of the duties of their offices, and whose bonds are tobe deposited in the Treasurer’s office, many of whom are the mere creatures of the law, and are unknown to the constitution ; and it is not improbable that this provision of the act may apply, in terms, to some of them. I concur, however, with my brother Martin, that a sheriff can only be removed from office by impeachment; but that question has- no necessary connexion with the present.
2nd. The second proposition requires a more general view of the act of 1820. The 3rd. section provides, “ That the bonds for the faithful performance of their official duties, to be hereafter entered into by all other public officers, whose bonds are by law directed to be deposited in the office of the Treasurer of the upper division,” (amongst which are included the bond *537 of the sheriff of Richland district,) “ shall be annually examined by the Secretary of State, the Surveyor General, and the Treasurer of the upper division, &c.” “ That if any of the sureties in either of the aforesaid officers’ bonds, should die, or remove from the State, or if the said examiners, or a majority of them, should at the time of their examination, or at any other time, be of opinion, that either of said sureties is not worth as much clear of debt as his proportion of the obligation to which his name is affixed, the said examiners, or a majority of them, shall cause the said public officer, whose surety has departed this life, or removed from the State, or is objected to for insolvency, to be notified of such exception ; and the said officer shall, within thirty days after the service of 'such notification, procure other satisfactory security to the said examiners, for such as have departed from the State, or died, (but the original bond shall not be cancelled or impaired,) or produce satisfactory evidence to the said examiners, that the surety objected to as insolvent, is worth as much as his proportion of the said obligation, clear of debt, or else the said public officer shall procure, such other and sufficient additional surety, or sureties, as a majority of the said examiners shall approve of. And in default of compliance with either of the said requisitions, within the said thirty days, the office of the said defaulting officer shall be regarded as vacant.” Acts of 1820, p. 43.
I have given a literal transcript of this clause of the act, because it contains everything that appertains to the questionsmade by the proposition now under consideration, and carries with it an answer, that it appears to me difficult to mistake. By the very terms of the act, the obligation of the sureties to the original bond remained as it was before the addition of new sureties; and they, or the personal representatives of those who are dead, are bounds notwithstanding, to the extent of their original liability: and it is obvious, that the additional security was not intended to operate as a discharge to them, but as a further security, and indemnity, to the suitors, whose money would pass through the hands of the sheriff. It could not then boot the defendant, any thing, whether the death, insolvency, or removal of the ■one, or the other, of the original sureties caused the necessity fpr additional security ; and it was therefore unnecessary to set it out in the replication.
Cross u. IBaUey au**’
It is objected, however, that, to charge the defendant, it was incumbent on the plaintiffs to set out in the replication, and to Prove, that this additional security was given in pursuance of a requistion from the examiners, pointed out in the act; because it is said, that without it there is no law authorizing the bond to be taken, and it is therefore void. The replication does, state that additional security was required, although it docs not allege that the requisition was made by the examiners pointed out in the act. I cannot suppose, however, that such an allegation was at all necessary ; and the facts developed in the progress of this case manifest, in my opinion, the impropriety of requiring that it should have been made. It does not appear, that, in point of fact, a formal requisition ever was made ; but the evidence is abundant, that the death of one, the removal of another, and the probable insolvency of two other of the original sureties, produced exactly the state of things, contemplated by the act, which would have obliged Hilliard to submit to give the additional security upon a regular proceeding under the act: and there can be no doubt that this bond was given in anticipation of, and to render such a proceeding unnecessary. Now, I have always considered it more praise-worthy, to do that, which the law enjoins, of one’s own accord, than to wait to be compelled to do it by a course of law ; and of one thing I am very certain, that the law will not avoid that, which it commands, and will force to be done.
But putting it upon the footing of a merely voluntary act, on the part of the defendant, and I know of no principle which will avoid his bond. There is nothing immoral, nor can I perceive in it any thing illegal. It had for its consideration, the protection of Hilliard from proceedings under the act of 1820, and his possible impeachment, and ejection from office ; á consideration I should think meritorious enough. I recollect, too, a case which was some time ago decided in Charleston, and which I had thought was reported, but have not been able to which bears a strong analogy to this. It was an action °n a ^otl<^ §*ven by a collector of fines of one of the regiments of militia in Charleston, for the faithful discharge of the duties of his office ; and notwithstanding there was no law which authorized the taking of such a bond, it was held, that his sureties were liable.
*539 3rd. The case of M’ Dowell v. Caldwell, and the other cases cited by the presiding Judge (supra, p. 533,) are perfectly satisfactory as to the third and last general proposition. The defendant is liable, as well for money collected, and not paid over, before he signed the bond, as for that received afterwards. I am. not prepared to say, that there may not be well founded exceptions to this rule. If, for instance, the sheriff, and all his original sureties had been sued, to utter insolvency, for money collected by him, before the defendant had signed the bond, it may, I think, be well doubted, whether it ought not to be regarded as a preceding breach of the condition of the bond, for which this defendant would not be chargeable by his subsequent signing. But these circumstances, nor any others corresponding with them, do not enter into this case, and it is therefore unnecessary to remark upon them.
I am therefore of opinion, that none of the grounds of this motion have been sustained, and it is accordingly dismissed.
Motion refused.